UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CLASS ACTION  **05-21584**

**CIV - ALTONAGA**

GLENN CONIGLIARO, JACQUELINE CONIGLIARO,
MARY CONIGLIARO, JOANNE WILLIAMS
JEAN LYNN EVANS, LARRY FELDMAN,
SUSAN GLEASON, ROSEANNE HUGHES,
DONNA JOHNSON, DAVID KOZAL,
SANDRA KRAHLING, JOHN KREPPEL,
KELLY MASI, NICHOLAS MASI, PHILIS MINANCAPILLI,
JAMES NEAVES, TERRY NEAVES, DEIDRE ELISE PETUK,
NANCY PINCIOTTI, IRENCE PLANTZ,
COLLETT SARRO, KENNETH SARRO, FLAVIA SUSALIS,
and MICHELLE SUSALIS,

MAGISTRATE JUDGE
TURNOFF

          Plaintiffs,

V.

NORWEGIAN CRUISE LINE LIMITED, a Bermuda corporation
d/b/a Norwegian Cruise Line, and NCL (BAHAMAS) LTD., d/b/a NCL
and/or NCL America,

          Defendants.

---

### CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL

Plaintiffs, GLENN CONIGLIARO, JACQUELINE CONIGLIARO, MARY

CONIGLIARO, JEAN LYNN EVANS, LARRY FELDMAN, SUSAN GLEASON,

ROSEANN HUGHES, DONNA JOHNSON, DAVID KOZAL, SANDRA KRAHLING,

JOHN KREPPEL, KELLY MASI, NICHOLAS MASI, PHILIS MINANCAPILLI,

JAMES NEAVES, TERRY NEAVES, DEIDRE ELISE PETUK, NANCY PINCIOTTI,

IRENE PLANTZ, COLLETT SARRO, KENNETH SARRO, FLAVIA SUSALIS,

MICHELLE SUSALIS, and JOANNE WILLIAMS bring this action as a class action

1

against Defendants, on behalf of themselves and all passengers of the M/V "NORWEGIAN DAWN" who were onboard on April 10, 2005 and suffered physical and/or emotional injury, and those passengers who were deprived of the cruise that they paid for and/or were only provided a 50% refund.

Plaintiffs seek damages and demand a jury trial on all issues so triable on behalf of all those similarly situated, and allege:

## JURISDICTION AND VENUE

1. This is an action under General Maritime Law of the United States and this Court has subject matter jurisdiction to 28 U.S.C. §1331 and §1333. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants, NORWEGIAN CRUISE LINE LIMITED, and NCL (BAHAMAS) LTD., resides in this District.

## PARTIES

2. Plaintiff GLENN CONIGLIARO is a resident of Marlboro, New Jersey, and is otherwise *sui juris*.

3. Plaintiff JACQUELINE CONIGLIARO is a resident of Howell, New Jersey, and is otherwise *sui juris*.

4. Plaintiff MARY CONIGLIARO is a resident of Holmdel, New Jersey, and is otherwise *sui juris*.

5. Plaintiff JENA LYNN EVANS is a resident of Somerset, New Jersey, and is otherwise *sui juris*.

6. Plaintiff LARRY FELDMAN is a resident of Edison, New Jersey, and is otherwise *sui juris*.

2

7.     Plaintiff SUSAN GLEASON is a resident of Marlboro, New Jersey, and is otherwise *sui juris*.

8.     Plaintiff ROSEANNE HUGHES is a resident of Spring Lake Heights, New Jersey, and is otherwise *sui juris*.

9.     Plaintiff DONNA JOHNSON is a resident of Spottswood, New Jersey, and is otherwise *sui juris*.

10.     Plaintiff DAVID KOZAL is a resident of Edison, New Jersey, and is otherwise *sui juris*.

11.     Plaintiff SANDRA KRAHLING is a resident of Stockton, New Jersey, and is otherwise *sui juris*.

12.     Plaintiff JOHN KREPPEL is a resident of Brick, New Jersey, and is otherwise *sui juris*.

13.     Plaintiff KELLY MASI is a resident of Little Egg Harbor, New Jersey, and is otherwise *sui juris*.

14.     Plaintiff NICHOLAS MASI is a resident of Little Egg Harbor, New Jersey, and is otherwise *sui juris*.

15.     Plaintiff PHILIS MINANCAPILLI is a resident of Brooklyn, New York, and is otherwise *sui juris*.

16.     Plaintiff JAMES NEAVES is a resident of Spring Lake Heights, New Jersey, and is otherwise *sui juris*.

17.     Plaintiff TERRY NEAVES is a resident of Spring Lake Heights, New Jersey, and is otherwise *sui juris*.

3

18.     Plaintiff Deidre ELISE PETUK is a resident of Roselle, New Jersey, and is otherwise *sui juris*.

19.     Plaintiff NANCY PINCIOTTI is a resident of Feasterville, PA, and is otherwise *sui juris*.

20.     Plaintiff IRENE PLATZER is a resident of Howell, New Jersey, and is otherwise *sui juris*.

21.     Plaintiff COLLETT SARRO is a resident of Point Pleasant, New Jersey, and is otherwise *sui juris*.

22.     Plaintiff KENNETH SARRO is a resident of Point Pleasant, New Jersey, and is otherwise *sui juris*.

23.     Plaintiff FLAVIA SUSALIS is a resident of Jackson, New Jersey, and is otherwise *sui juris*.

24.     Plaintiff MICHELLE SUSALIS is a resident of Red Bank, New Jersey, and is otherwise *sui juris*.

25.     Plaintiff JOANNE WILLIAMS is a resident of Howell, New Jersey, and is otherwise *sui juris*.

26.     Defendants, NORWEGIAN CRUISE LINE LIMITED, and NCL (BAHAMAS) LTD., with their principle place of business at 7665 Corporate Center Drive, Miami, Florida.  At all time material to this action, Defendants conducted business within the State of Florida and maintained a registered agent in the State of Florida.

## BACKGROUND

27.     Plaintiffs, GLENN CONIGLIARO, JACQUELINE CONIGLIARO, MARY CONIGLIARO, PAUL RICHARD DOELLING, JEAN LYN EVANS, LARRY

FELDMAN, SUSAN GLEASON, ROSEANN HUGHES, DONNA JOHNSON, DAVID KOZAL, SANDRA KRAHLING, JOHN KREPPEL, KELLY MASI, NICHOLAS MASI, PHILIS MINANCAPILLI, JAMES NEAVES, TERRY NEAVES, DEIDRE ELISE PETUK, NANCY PINCIOTTI, IRENE PLANTZ, COLLETT SARRO, KENNETH SARRO, FLAVIA SUSALIS, MICHELLE SUSALIS, and JOANNE WILLIAMS purchased tickets for a cruise aboard the Norwegian Cruise Line's Ship, M/V "NORWEGIAN DAWN".

28.     On or about April 10, 2005, the M/V "NORWEGIAN DAWN" set sail from New York, for a scheduled one-week cruise with over two thousand passengers aboard the ship.

29.     At the time the ship set sail for the scheduled one-week cruise, Defendants knew two major facts: one was that there was a major storm approaching that could pose a threat to the cruise, and the other was that the ship had a contract with Donald Trump/The Apprentice television show which required the M/V "NORWEGIAN DAWN" to arrive back in New York on Sunday, April 17, 2005 at approximately 5:00 a.m., several hours earlier than the otherwise regularly scheduled return time for this particular cruise.

30.     Based on the contractual agreement that Defendants had with the television show The Apprentice, there was an itinerary change made to the scheduled cruise. The itinerary change was not timely presented to the passengers, but was instead presented to the passengers at a time that was too late for the passengers to decide if they wanted to go forward with the scheduled cruise or cancel and obtain a refund.

31.     At the time the ship set sail, Defendants knew or should have known that the ship would sail through waters that, based on predictable weather conditions that would develop as a result of the storm, would result in severe and dangerous weather conditions, and create conditions that could result in what has been described as a "rogue wave", which based on the area the ship was sailing and the weather conditions, would not be an extraordinary or unusual phenomenon.

32.     None of the passengers were advised prior to the beginning of the cruise, nor prior to the ship encountering the severe weather conditions the ship encountered, that the ship needed to return early to New York in order to participate in a filming with The Apprentice show.  This fact was withheld from the passengers.

33.     Soon after the vessel sailed from New York, CNN reports were observed by the passengers, and the passengers became aware that a severe storm was posing more of a threat to the cruise.

34.     Notwithstanding the severity of the weather conditions, which were known or should have been known to Defendants, Defendants continued to attempt to return to New York early in time to film The Apprentice show.

35.     Notwithstanding the fact that other cruise lines decided to wait until the adverse weather conditions changed before setting sail, the Defendants went forward with their scheduled plan to return to New York for the filming of the Apprentice show, putting the lives and safety of all of the passengers and crew at risk.

36.     Defendants made a willful and conscious decision to embark on a course which resulted in the M/V "NORWEGIAN DAWN" heading right into a storm that had been well known to Defendants.  Defendants knew the ship would be encountering

6

extremely rough weather by engaging on the course it proceeded on. As expected, the ship for many hours encountered severely rough weather, causing the vessel to be violently impacted, pitching and rolling violently, causing objects to fall, fly and break, and causing extreme fear and panic in the passengers;

37. After encountering severe rough weather for many hours, resulting in severe pitching and rolling of the ship, causing passengers to panic and get sick, causing objects to go flying and break, the ship was then struck by a wave of seventy (70) feet high, which crashed over the bow of the cruise ship, breaking windows, flooding cabins, and injuring passengers. The severity of the wave was such that it smashed windows, sent furniture flying, and ripped out whirlpools on the M/V "NORWEGIAN DAWN".

38. The seventy (70) foot wave that struck the M/V "NORWEGIAN DAWN", although described by a spokesperson for the company as being a "freak wave or extraordinary", was not a wave that was extraordinary or rare. Instead, this size wave, based on the weather conditions known to Defendants, which they intentionally encountered, was the type of wave that was known and should have been anticipated. Experts indicate that such a wave is not so unusual, and has resulted in many prior disasters to ships, and several other vessels, including a Norwegian Cruise Line vessel which had previously encountered such size waves. It is a well known scientific fact how these types of waves develop, and they can be reasonably expected in the type of waters and weather conditions the M/V "NORWEGIAN DAWN" was sailing in. During the cruise in question the M/V "NORWEGIAN DAWN" was at least the third cruise ship this year alone to encounter what was described by Defendants as a "rogue wave". The alleged "rogue wave" in the instant case was not a "freak wave", but instead was the type

7

of wave that could reasonably be expected to occur based on the existing weather patterns and conditions.

39.     Plaintiffs and those similarly situated (which is alleged to be the over two thousand passengers onboard the ship) clearly, unequivocally, and without doubt experienced severe fright, anxiety, terror, and emotional distress as a result of the severe weather conditions encountered by the M/V "NORWEGIAN DAWN", and the manner in which the vessel was affected, and the life threatening situation that was perceived by the passengers.

40.     Plaintiffs and those similarly situated, clearly suffered some type of physical impact to their bodies due to the extreme jolting, pitching, rolling, experienced by each and every passenger onboard the ship.

41.     It is also known that the M/V "NORWEGIAN DAWN" was built as a passenger cruise ship, not a typical ocean liner, and therefore would be the type of vessel less suitable for extremely severe weather conditions due to the manner in which the vessel was built, including the vessel's draft.

42.     At all times material hereto, Defendants knew or should have known of the severe weather conditions and the risk to the lives and safety of those aboard the ship.

43.     Defendant's actions in setting sail directly into a known storm can only be described as intentional, willful, wanton, and with reckless disregard for the lives and safety of those aboard the ship, and thus Defendants should be subject to the imposition of punitive damages for putting other interests ahead of the lives and safety of those aboard the ship.

8

44.     A class action is appropriate in this case pursuant toRule 23(a) and 23(b)(3), Federal Rules of Civil Procedure, in that the severe weather conditions encountered, including the seventy (70) foot wave, and the impact the weather had on the ship, sufficient to flood cabins, blow out windows, damage furniture and equipment, and otherwise cause objects to go flying causing bruises and cuts to passengers, clearly affected each and every passenger aboard the ship.

45.     The following descriptions of the incident have been reported in various articles, which is a sampling of different passengers descriptions of what was encountered, which Plaintiffs demonstrate this incident clearly impacted each and every passenger onboard the vessel, and resulted in at least some type of emotional injury and physical jolting.  A sampling of these statements is as follows:

a.      "The ship went way up on its side," one passenger said. "When that happened, the chairs were sliding down." "People were afraid." "Anything that was not nailed down was going to move."

b.      "The sea was scary as hell."  "I thought, when this ship goes down, how can I save myself so I can go back to my kids?"

c.      Another passenger heard a "boom!" which resulted in the passengers thinking this was going to be like "The Titanic"  The description by this passenger was that his wife and his seven-year old daughter, in a panic, ran to the reception area and found passengers from flooded cabins bunched together, wearing life preserves, and crying hysterically.

d.      "We were going back and forth, up and down and then 'boom!'"

e.  Another passenger discussed that sudden fear swept through the estimated two thousand (2,000) passengers after the ship was hit by the seventy (70) foot wave, which was high enough to flood cabins on the ninth and tenth decks of the fourteen deck ship.

f.  Others described that as they were trapped in this monstrous weather conditions, they could see funnel clouds forming in the sea as the ship was pushing through the storm, further creating fear among all of the passengers.

g.  Another passenger stated, "It's been a nightmare."

h.  Another passenger was quoted as stating: . . ."I heard what sounded like an explosion . . . I was scared for my daughter."

i.  Another quote found from a passenger is as follows: "We had no idea we'd have almost 48 hours of 40-foot swells," said a choked up Kathleen Riccardi, 31, of Brooklyn. "I called my mother from the boat and told her that I loved her because I was not sure if I would ever see her again."

j.  Another quote of a passenger is as follows: "We felt the whole front of the ship and it must have left the water because it slammed and hit the water."

k.  Another quote of a passenger concerning her observation of other passengers was as follows: "They looked like zombies."

l.  One article described the situation as follows: "The storm bared down on the ship soon after it left Miami at 1:00 a.m. Friday. For hours, the giant waves picked up the nine hundred and sixty five foot vessel and slapped it back down. Wave after wave knocked against the windows. Cold salt

10

water ran down the halls and into the cabin Russo shared with her husband and three children." And they were on the ninth deck. Imagine what it was like for people beneath! The article further states that the thirty-nine year old mother from Wayne was petrified. She sloshed through ankle deep water while her six-moth old son cried in his crib. The nine year old was screaming and the thirteen year old was vomiting.

m.  There were descriptions of speakers coming loose from the ceiling and plummeting to the floor, waiters falling over, thousands of dollars worth of crystal falling and being smashed from displays, people covered in blood from head to toe, shattered windows, flooding, and people screaming.

n.  Passengers described difficulty moving because the ship was pitching so violently. Elevators were banging against the shafts. Passengers were described as having to try to sit down to maintain their balance due to heavy pitching.

o.  Passengers gathered in the reception area with life vests.

p.  Passengers were praying.

q.  To make matters worse, the piano player onboard the ship was playing music from the movie Titanic which resulted in passengers screaming at the pianist to stop.

r.  Doors kept opening and slamming shut.

s.  Passengers had to look for safe areas in the hallway to cuddle up together on the floor for safety.

t.     Another passenger quoted in an article as follows: "We wondered how we'd get out of it. It was pitch black outside. All we wanted to do was to get off the ship . . . The kids were scared to death.  They just wanted to get off the ship.  I prayed we'd make it to shore."

u.     Another quote, "My luggage was flying all over the room, glass was broken.  Everything was on the floor. It looked like we got robbed.  We had to hold on – me and my wife were holding on to each other and holding on to the bed.  It was a rough ride.  It was like being in a washing machine."

v.     Another quote from an article was as follows: "My daughter said people were freaking out, . . . she said some doors were ripped off and broken glass was everywhere. The ship "feels like the Titanic . . . water running everywhere, with people getting hurt and panicking."

46.    Plaintiffs propose a class action in that the common issues and questions of law and fact predominate in this matter.  One lawsuit to establish the liability of Defendants is in the best interests of justice.  To require over two thousand passengers to file separate lawsuits, which could result in inconsistent verdicts, is not in the interest of justice.  Furthermore, there will be many passengers who although were physically jolted, and suffered some type of emotional impact from the incident, would not have a sufficient incentive or ability to bring a lawsuit because their damages may not be significant enough, making over two thousand separate law suits impractical, not to mention highly costly.

47.     The attorneys filing this lawsuit are highly skilled in the aspect of maritime law, practicing maritime law for over twenty (20) years, and focusing solely in maritime personal injury and wrongful death litigation, and thus would serve as adequate representation for the Class Members.

48.     The Court can certify the Class as those similarly situated who encountered the severe weather conditions during the cruise in question, and who suffered some type of physical jolting or emotional injury as a result of the incident, and those passengers who were deprived of the cruise that they bargained and paid for, and thus entitled to a complete refund for the amount of the passenger ticket paid for. (Defendants only provided a refund of fifty (50%) percent of the cruise, giving a voucher for fifty (50%) percent credit for future cruises in addition to the fifty (50%) percent refund, which would not be a complete refund of the passenger ticket paid.).

49.     The class of passengers who suffered injury and are entitled to a refund are so numerous that joinder of each individual of such a Class would be impractical.

50.     The issues of law or fact in this action are common to the class of passengers sought to be represented in this Class Action.

51.     Each named Plaintiff is typical of the class sought to be represented in this action in that their claims arise from the same event or course of conduct that gives rise to other class members  so similarly situated and all of  the claims are based on the same legal theories.

52.     The representative parties named herein can adequately represent the class as the named plaintiffs don't have interests antagonistic to the class, and are represented by qualified experienced Counsel in Maritime cases.

53.     The questions of law or fact common to the members predominate over any questions affecting only individual members.

54.     A class action in this matter is superior to other methods to a fair and efficient adjudication of the controversy.

55.     Plaintiffs, on behalf of themselves and all Class Members, claim compensatory and punitive damages in excess of One Hundred (100) Million Dollars.

## COUNT I
## NEGLIGENCE

Plaintiff re-allege paragraphs 1 through 55 as though fully set forth herein further allege that:

56.     Defendants, as a common carrier for hire, had a duty to the passengers to exercise reasonable care under the circumstances to safely transport the passengers to and from the place of embarkation and disembarkation, and take all reasonable steps necessary to provide for the safety of the passengers during the entire one-week cruise.

57.     Defendants breached their duty of care owed to the passengers, as follows:

    a.     Defendants failed to take appropriate actions upon learning of the storm;

    b.     Defendants failed to change the itinerary and course of the ship based on the anticipated weather conditions;

    c.     Defendants intentionally encountered known risks of the affects of the storm;

    d.     Defendants failed to change the course of the vessel until it was too late to avoid the unsafe conditions of the storm;

14

e.   Defendants failed to remain in port or divert to an area of safety;

f.   Defendants failed to properly navigate the ship;

g.   Defendants failed to properly instruct the Captain on what actions to take;

h.   Defendants put the lives and safety of the passengers at risk in order to get back to New York on time because of the scheduled filming with the television show The Apprentice;

i.   Defendants failed to timely contact the United States Coast Guard with a distress call, and to receive advice concerning the navigation of the vessel;

j.   Defendants intentionally entered into a known storm, with known risks, including the known risk of encountering what has been described as a "rogue wave";

k.   Defendants failed to properly notify the passengers of the itinerary change and the reasons for the change to properly enable the passengers to cancel their cruise and obtain a complete refund prior to the time it was too late;

l.   Defendants took actions during the storm which only aggravated the emotional injuries to the passengers, including providing passengers with free alcohol, and then writing letters to the passengers after the completion of the cruise advising them of information that may not be accurate in order to preclude or avoid the passengers filing lawsuits against the company.

m.      Defendant's ship should have been ported knowing the sea conditions were increasingly building and of a magnitude close or equal to hurricane force, which would have avoided the outcome as it occurred.

58.     As a result of Defendants negligent conduct, the named Plaintiffs, and all of those so similarly situated, whom Plaintiffs are seeking class certification for, suffered emotional injury and/or physical injury and all were within the zone of danger caused and created by Defendants' negligent conduct.

59.     As a further result of Defendants' negligence, the named Plaintiffs and all of those so similarly situated whom Plaintiffs are seeking class certification for were deprived of the use and enjoyment of the cruise they purchased, and should have received the full price of the ticket price paid instead of the 50% refund they received.

WHEREFORE, the named Plaintiffs', on behalf of themselves and on behalf of all Class Members so similarly situated, demand judgment jointly and severally against Defendants for damages, together with lawful interest, plus costs of suit and fees, and demand trial by Jury of all issues so triable.

## COUNT II
## BREACH OF CONTRACT

Plaintiff re-alleges paragraphs 1 through 59 as though fully set forth herein further allege that:

60.     The named Plaintiffs, and all of those so similarly situated whom Plaintiffs are seeking class certification for, were issued passenger contracts. The passenger contracts created a duty owed to each passenger on the part of Defendants to exercise

reasonable care for each passengers' safety, and/or to transport each passenger from the point of embarkation to disembarkation safely.

61.     Defendants breached their duty to the named Plaintiffs, and all of those so similarly situated, whom Plaintiffs are seeking class certification for,  by virtue of the following acts and/or omissions:

a.     Defendants failed to take appropriate actions upon learning of the storm;

b.     Defendants failed to change the itinerary and course of the ship based on the anticipated weather conditions;

c.     Defendants intentionally encountered known risks of the affects of the storm;

d.     Defendants failed to change the course of the vessel until it was too late to avoid the unsafe conditions of the storm;

e.     Defendants failed to remain in port, or divert to an area of safety;

f.     Defendants failed to properly navigate the ship;

g.     Defendants failed to properly instruct the Captain on what actions to take;

h.     Defendants put the lives and safety of the passengers at risk in order to get back to New York on time because of the scheduled filming with the television show The Apprentice;

i.     Defendants failed to contact the United States Coast Guard timely with a distress call, and to receive advice concerning the navigation of the vessel;

17

j.    Defendants intentionally entered into a known storm, with known risks, including the known risk of encountering what has been described as a "rogue wave";

k.    Defendants failed to properly notify the passengers of the itinerary change, and the reasons for the change, to properly enable the passengers to cancel their cruise and obtain a complete refund prior to the time it was too late;

l.    Defendants took actions during the storm which only aggravated the emotional injuries to the passengers, including providing passengers with free alcohol, and then writing letters to the passengers after the completion of the cruise advising them of information that may not be accurate in order to preclude or avoid the passengers filing lawsuits against the company.

m.    Defendants ship should have been ported knowing the sea conditions were increasingly building and of a magnitude close or equal to hurricane force, which would have avoided the outcome as it occurred.

62.    As a result of the breach of contract the named Plaintiffs, and all of those so similarly situated whom Plaintiffs are seeking class certification for were deprived of the use and enjoyment of the cruise they purchased and should have received the full price of the ticket price paid instead of the 50% refund they received.

63.    As a further result of the breach of contract the named Plaintiffs, and all

18

of those so similarly situated whom Plaintiffs are seeking class certification for suffered emotional injury and/or physical injury and all were within the zone of danger caused, created by Defendants conduct.

WHEREFORE, the named Plaintiffs', on behalf of themselves and on behalf of all Class Members so similarly situated, demand judgment jointly and severally against Defendants for damages, together with lawful interest, plus costs of suit and fees, and demand trial by Jury of all issues so triable.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/ INTENTIONAL OUTRAGE

Plaintiff re-alleges paragraphs 1 through 63 as though fully set forth herein further allege that:

64.     Defendants acted on their own and through agents and employees, deliberately and intentionally took a ship into a known storm which endangered the lives and safety of over two thousand passengers and over one thousand crew members such conduct can only be described as outrageous in nature and would subject Defendants to liability for intentional infliction of emotional distress and liability for the Tort of Outrage.

65.     As a result of the intentional infliction of emotional distress and outrageous conduct by Defendants, the named Plaintiffs and all of those so similarly situated whom Plaintiffs are seeking class certification for were deprived of the use and enjoyment of the cruise they purchased, and should have received the full price of the ticket price paid instead of the 50% refund they received.

19

66.     As a further result of the intentional infliction of emotional distress and outrageous conduct by Defendants, the named Plaintiffs and all of those so similarly situated whom Plaintiffs are seeking class certification for suffered emotional injury and/or physical injury and all were within the zone of danger caused and created by Defendants conduct.

WHEREFORE, the named Plaintiffs', on behalf of themselves and on behalf of all Class Members so similarly situated, demand judgment jointly and severally against Defendants for damages, together with lawful interest, plus costs of suit and fees, and demand trial by Jury of all issues so triable.

## COUNT IV
## PUNITIVE DAMAGES

Plaintiff re-alleges paragraphs 1 through 66 as though fully set forth herein further allege that:

67.     Defendants conduct in deliberately taking the M/V "NORWEGIAN DAWN", its passengers and crew directly into a storm of such severe magnitude, with seas of 20 to 40 feet and Gale force winds for over a 24 hour period and in an area of the ocean which was known to increase the likelihood of encountering sudden extreme wave and weather conditions, completely disregarded the safety and welfare of its passengers and crew and deliberately placed each and every passenger in the zone of danger.

68.     At the time that Defendants departed Miami and headed for New York, there was a known storm with at least Gail force winds. The winds were out of the north/northeast and this factor, in addition to the waves of approximately 20 to 40 feet, both going against the Gulfstream current, created an extremely dangerous condition for mariners. Defendants knew or should have known these conditions existed and the

Dangers such conditions created. Nevertheless, Defendants knowingly, recklessly, intentionally, and with total disregard for the lives and safety of its passengers and crew, navigated the M/V "NORWEGIAN DAWN" directly into this dangerous area.

69.     Defendants deliberately entered this zone of danger in order to arrive in New York to attend a previously scheduled "special event", ignoring alternatives which would have not placed the passengers in the zone of danger and put their lives and safety at risk.

70.     As a result of the intentional, reckless, willful and outrageous conduct by Defendants the named Plaintiffs and all of those so similarly situated whom Plaintiffs are seeking class certification for were deprived of the use and enjoyment of the cruise they purchased, and should have received the full price of the ticket price paid instead of the 50% refund they received.

71.     As a further result of the intentional, reckless, willful and outrageous conduct by Defendants, the named Plaintiffs and all of those so similarly situated whom Plaintiff's are seeking class certification for suffered emotional injury and/or physical injury and all were within the zone of danger caused and created by Defendant's conduct and had their lives and safety put at risk.

WHEREFORE, the named Plaintiffs', on behalf of themselves and on behalf of all Class Members so similarly situated, demand judgment jointly and severally against Defendants for punitive damages, together with lawful interest, plus costs of suit and fees, and demand trial by jury of all issues so triable.

WHEREFORE, Plaintiffs, GLENN CONIGLIARO, JACQUELINE CONIGLIARO, MARY CONIGLIARO, PAUL RICHARD DOELLING, JEAN LYN

21

EVANS, LARRY FELDMAN, SUSAN GLEASON, ROSEANN HUGHES, DONNA JOHNSON, DAVID KOZAL, SANDRA KRAHLING, JOHN KREPPEL, KELLY MASI, NICHOLAS MASI, PHILIS MINANCAPILLI, JAMES NEAVES, TERRY NEAVES, DEIDRE ELISE PETUK, NANCY PINCIOTTI, IRENE PLANTZ, COLLETT SARRO, KENNETH SARRO, FLAVIA SUSALIS, MICHELLE SUSALIS, and JOANNE WILLIAMS, on behalf of themselves and all those similar situated, demand judgment against Defendants, NORWEGIAN CRUISE LINE LIMITED, a Bermuda corporation d/b/a Norwegian Cruise Line, and NCL (BAHAMAS) LTD., d/b/a NCL and/or NCL America, for damages as well pre-judgment and post-judgment interest, costs and attorney's fees to the extent allowed by law, and demand a trial by jury of all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated this ___ day of June, 2005.

Respectfully Submitted,

RIVKIND PEDRAZA & MARGULIES, P.A.
Attorneys for Plaintiffs
GLENN CONIGLIARO, et al.
66 West Flagler Street
Suite 600
Miami, Florida 33130
Telephone (305) 374-0565
Facsimile (305) 539-8341

By:_____
BRETT A. RIVKIND, ESQ.
Florida Bar No.: 373486

22

# CIVIL COVER SHEET

05-21584

CIV-ALTONAGA

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

GLENN CONILIARO, et al.

## DEFENDANTS

NORWEGIAN CRUISE LINE LIMITED, a Bermuda corporation, d/b/a Norwegian Cruise Line, and NCL (BAHAMAS) LTD., d/b/a NCL and/or NCL America

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

Nadous 21584/Altunaga/Turnoff

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

MAGISTRATE JUDGE
TURNOFF

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
RIVKIND, PEDRAZA & MARGULIES, P.A.
66 W. Flagler St., Ste 600, Miami, FL
33130            (305) 374-0565

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question ADMIRALTY
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### A CONTRACT

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
B☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### A REAL PROPERTY

☐ 210 Land Condemnation
B☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### A TORTS

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☒ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury – Med Malpractice
☐ 365 Personal Injury – Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### A CIVIL RIGHTS

☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### FORFEITURE/PENALTY

B☐ 610 Agriculture
B☐ 620 Other Food & Drug
B☐ 625 Drug Related Seizure of Property 21 USC 881
B☐ 630 Liquor Laws
B☐ 640 R R & Truck
B☐ 650 Airline Regs
B☐ 660 Occupational Safety/Health
B☐ 690 Other

### A LABOR

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
A☐ 791 Empl. Ret. Inc Security Act

### PRISONER PETITIONS

B☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
B☐ 530 General
A☐ 535 Death Penalty
B☐ 540 Mandamus & Other
B☐ 550 Civil Rights
B☐ 555 Prison Condition

### A BANKRUPTCY

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### A PROPERTY RIGHTS

☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### B SOCIAL SECURITY

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

A☐ 870 Taxes (U S Plaintiff or Defendant)
A☐ 871 IRS – Third Party 26 USC 7609

### A OTHER STATUTES

☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
B☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions
A OR B

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Maritime Negligence, Breach of Contract, Tort of Outrage, and Punitive Damages

LENGTH OF TRIAL
via ____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____        DOCKET NUMBER _____

DATE
June 14, 2005

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 922489 AMOUNT 250 — APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____